[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13571
Non-Argument Calendar
_____

D.C. Docket No. 5:11-cr-00083-MTT-CHW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DELDRICK DEMONE JACKSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(December 3, 2015)

Before MARCUS, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Deldrick Demone Jackson appeals his 130-month total sentence, which the district court imposed after he pled guilty to conspiring to distribute cocaine and launder money. He contends that the district court should not have allowed the government to withdraw its U.S.S.G. § 5K1.1 substantial-assistance motion after he admitted to engaging in unauthorized criminal activity while on bond awaiting sentencing. After careful consideration, we affirm the district court.

I.

Mr. Jackson was indicted on one count of conspiracy to distribute cocaine and one count of conspiracy to launder money. After his arraignment, he was released on bond. He agreed to plead guilty to both counts pursuant to a plea agreement that obliged him to provide statements to law enforcement officers regarding his knowledge of criminal activity and to testify in proceedings when called upon to do so. In exchange, the government agreed to consider whether his cooperation warranted a government motion recommending a downward departure in sentence. The agreement warned Mr. Jackson that if he engaged in any additional criminal conduct, he would not be entitled to any such consideration. The government agreed, however, that any self-incriminating information provided by Mr. Jackson pursuant to the agreement, other than that concerning violent conduct, would not be used in calculating Mr. Jackson's guideline sentencing

2

range or as a basis for bringing additional charges, so long as the government had not previously known the information.

The district court accepted Mr. Jackson's guilty plea at a change-of-plea hearing. The government subsequently filed a § 5K1.1 motion stating that Mr. Jackson had provided substantial assistance in its investigations. It then withdrew that motion upon learning that Mr. Jackson had engaged in additional unauthorized criminal conduct in violation of his plea agreement. At Mr. Jackson's sentencing hearing, Special Agent Helen Graziadei testified that she met with Mr. Jackson while he was in custody after entering his plea to determine whether he could provide further information to the government. Mr. Jackson told Agent Graziadei that he had knowledge of a new drug trafficking group transporting marijuana from Atlanta to Tifton, Georgia. During this conversation he admitted that while on bond awaiting sentencing, he had assisted this group in moving 300 to 400 pounds of marijuana by riding in a "follow car." Mr. Jackson did not have counsel present during this conversation and he was not read his *Miranda*[1] rights.

The district court determined that Mr. Jackson had engaged in new criminal activity and thus he was not entitled to a substantial assistance motion under the terms of the plea agreement. Nevertheless, the court determined that Mr. Jackson had provided substantial assistance and exercised its discretion to apply a

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

downward variance.  The court sentenced Mr. Jackson to 130 months in prison, which was below the applicable guideline range of 188 to 235 months.  Following entry of judgment, Mr. Jackson appealed.

## II.

Mr. Jackson argues that the government breached the plea agreement in two ways.  First, he contends that the government breached the agreement by withdrawing its § 5K1.1 motion, even though no provision of the agreement allowed it to do so.  Second, he argues that the government breached the plea agreement's provision barring the government from using self-incriminating statements to increase his sentencing range when it relied on his self-incriminating statements to withdraw its § 5K1.1 motion.[2]  We review *de novo* the question of whether the government breached a plea agreement.  *United States v. Carlson*, 87 F.3d 440, 447 (11th Cir. 1996).

When a plea rests in any significant degree on a promise by the government, such that it can be said to be part of the inducement or consideration for the plea, such a promise must be fulfilled.  *Santobello v. New York*, 404 U.S. 257, 262 (1971).  In interpreting a plea agreement, the court should avoid a "hyper-technical

---

[2] Mr. Jackson asserts in his brief that his due process rights were violated because he made the incriminating statements without *Miranda* warnings and in the absence of an attorney.  To the extent Mr. Jackson is claiming that the government's failure to provide him with an attorney or *Miranda* warnings raises a constitutional issue, he has failed to adequately brief that issue or cite to any relevant authority.  Accordingly, any such argument is abandoned.  *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

reading of the written agreement" or "a rigidly literal approach in the construction of language." *In re Arnett*, 804 F.2d 1200, 1203 (11th Cir.1986) (internal quotation marks omitted).  Moreover, it should view the agreement "against the background of the negotiations" and should not interpret the agreement to "directly contradic[t] [an] oral understanding." *Id.*  To the extent that a plea agreement is ambiguous, it "must be read against the Government." *Id*. (internal quotation marks omitted).  When the government fails to fulfill a promise that induced a guilty plea, the district court has discretion to fashion an appropriate remedy, such as allowing the defendant to withdraw his guilty plea or ordering specific performance. *Santobello*, 404 U.S.at 262-63.

We conclude that the government has not breached its plea agreement with Mr. Jackson.  Section 5K1.1 of the guidelines allows a court to depart from the sentencing range suggested by the guidelines "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense."  U.S.S.G. § 5K1.1.  Significantly, the plea agreement contains no guarantee that the government would file a § 5K1.1 motion if Mr. Jackson rendered assistance.  It provides that if Mr. Jackson cooperated with the government, "the government agree[d] *to consider* whether such cooperation qualifie[d] as 'substantial assistance' pursuant to 18 U.S.C. Section 3553(e) and/or Section 5K1.1 of the advisory Sentencing

Guidelines warranting a government motion at the time of sentencing recommending a downward departure." Plea Agreement at 7 (Doc. 20) [3] (emphasis added). Where, as here, a plea agreement only requires the government to "consider" filing a substantial-assistance motion, the government does not breach the agreement by refusing to file the motion, *see United States v. Forney*, 9 F.3d 1492, 1499-1500 (11th Cir. 1993), unless its refusal was based on an unconstitutional motive. *Wade v. United States*, 504 U.S. 181, 185-86 (1992). And there is no assertion that the government acted with an unconstitutional motive in this case.

The government complied with the plea agreement when it moved to withdraw its § 5K1.1 motion. The plea agreement clearly specifies that if Mr. Jackson engaged in "any additional criminal conduct," he would "not be entitled to consideration" under the substantial assistance provision. Plea Agreement at 7-8 (Doc. 20). Testimony at sentencing supported the district court's finding that Mr. Jackson engaged in unauthorized criminal activity after entering his plea. Indeed, Mr. Jackson does not dispute that he engaged in criminal activity.

Mr. Jackson argues that the plea agreement did not permit the government to file and then withdraw a § 5K1.1 motion and attempts to distinguish *Forney* by arguing that the government in *Forney* refused to file a § 5K1.1 motion, whereas

---

[3] "Doc." refers to the docket entry in the district court record in this case.

6

here, the government filed one and then subsequently withdrew it.  Mr. Jackson's position thus hinges on demonstrating that the language of the plea agreement draws (or at a minimum implies) a distinction between the government's refusal to file a motion recommending a reduction in sentence and its withdrawal of one. Mr. Jackson points to no language in the agreement creating such a distinction, fails to identify what practical purpose such a distinction would serve, and cites no legal authority for his position.  Needless to say, we find his argument unpersuasive.

The conditional language of the plea agreement only obliges the government to *consider* whether Mr. Jackson's cooperation warranted a motion recommending a downward departure in sentence. *See Forney*, 9 F.3d at 1499-00.  It imposes no limitation on how the government may choose to exercise that discretion and draws no distinction between filing a motion for downward departure and later withdrawing a motion so filed.  Indeed, it is difficult to imagine what would form the basis for such a distinction.  In both situations the government would have considered whether Mr. Jackson's cooperation warranted a reduced sentence and decided that—as a direct result of Mr. Jackson's subsequent criminal activity—it did not.  The government would have fulfilled its obligations under the terms of the plea agreement either way.

We also hold that the government's use of Mr. Jackson's incriminating statements as a basis for withdrawing its § 5K1.1 motion was consistent with the terms of his plea agreement.  Though the plea agreement restrains the government from using "any self-incriminating information which was previously unknown to the Government and is provided . . . as a result of the defendant's plea agreement," it only prevents the government from using such information to "determin[e] the advisory guideline range" or "bring additional charges against the defendant." Plea Agreement at 8 (Doc. 20).  It in no way limits the government's ability to use that information to determine whether Mr. Jackson's conduct merits a government motion recommending a reduced sentence.  The sentencing guidelines make clear than when "the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant . . . in determining the applicable guideline range," the government may still use the self-incriminating information to "determin[e] whether, or to what extent, a downward departure from the guidelines is warranted pursuant to a government motion under § 5K1.1." U.S.S.G. § 1B1.8.  The government's consideration of Mr. Jackson's admission is therefore entirely consistent with the terms of the plea agreement.

### III.

In sum, the district court did not err in allowing the government to withdraw its U.S.S.G. § 5K1.1 substantial-assistance motion.  We affirm.

8

**AFFIRMED.**